# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD BALTER,** : | |
| : | |
| **Plaintiff** : | **CIVIL ACTION NO. 3:09-1409** |
| : | |
| v. : | **(MUNLEY, D.J.)** |
| : | **(MANNION, M.J.)** |
| **UNITED STATES OF AMERICA** | |
| **and MEDICAL DEVELOPMENT** : | |
| **INTERNATIONAL, LTD., INC.,** | |
| : | |
| **Defendants** | |
| : | |

## **REPORT AND RECOMMENDATION**[1]

Pending before the court is the Plaintiff's Expedited Motion Requesting a Bureau of Prisons Placement in the Middle District Region of Pennsylvania. (Doc. No. 30). After oral argument on January 20, 2010, and upon review of the motion and related documentation, it is recommended that the plaintiff's motion be denied.

By way of relevant procedural background, the plaintiff, through counsel, initiated the instant action on July 20, 2009, in which he alleges that the defendants were negligent in providing medical treatment for his macular degeneration. As a result, the plaintiff alleges that he is legally blind in his left eye. (Doc. No. 1). An amended complaint was subsequently filed on

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

September 11, 2009. (Doc. No. 7). A second amended complaint was filed by the plaintiff on December 4, 2009. (Doc. No. 26). Answers to the second amended complaint were filed by the United States, (Doc. No. 28), and by Medical Development International Ltd., Inc., (Doc. No. 29), on December 18, 2009.

On January 5, 2010, counsel for the plaintiff filed the instant motion in which he indicates that the plaintiff has been informed that he will be transferred out of USP-Allenwood in the near future. Counsel is seeking to have the court enter an injunction directing the Bureau of Prisons to place the plaintiff in a facility within the Middle District of Pennsylvania in order to permit the plaintiff contact with his current treating physicians and his counsel. (Doc. No. 30). A brief in support was filed on January 8, 2010. (Doc. No. 31). The defendants filed a brief in opposition on January 15, 2010. (Doc. No. 32). Following a teleconference with both counsel on January 15, 2010, oral argument was scheduled for January 20, 2010. (Doc. No. 33). Supplemental briefs were filed by both parties on January 19, 2010. (Doc. No. 34, Doc. No. 36).

Plaintiff's counsel argues that the plaintiff has developed a relationship of trust with his treating physicians, with whom he has treated since 2003, and that they are familiar with his ongoing medical condition. In addition, counsel argues that the instant litigation is fact intensive which requires the plaintiff to have access to meet, confer and consult with his counsel. Counsel also argues that an injunction is necessary to "prevent the BOP from reaping the

reward of conduct that could give rise to a retaliation claim."[2]

With respect to the plaintiff's motion for injunctive relief, the Supreme Court has instructed that injunctive relief should be reserved for "extraordinary" situations. Sampson v. Murray, 415 U.S. 61, 88 (1974). In following that instruction, the Third Circuit has held that the granting of injunctive relief is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it. Warner Bros. Pictures v. Gittone, 110 F.2d 292 (3d Cir. 1940). Further, the Third Circuit has insisted that "the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." Adams v. Freedom Forge Corporation, 204 F.3d 475 (3d Cir. 2000)(citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992); Frank's GMC Truck Center, 847 F.2d 100, 102-03 (3d Cir. 1988)).

In considering a motion for injunctive relief, the district court must consider: (1) whether the movant has shown probability of success on the merits; (2) whether the movant will be irreparably harmed by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Brian B. v. Commonwealth, 230 F.3d 582 (3d Cir. 2000).

---

[2]To the extent that counsel believes he has a claim for retaliation, his remedy would appear to be by way of an appropriate civil rights action.

Concerning the first factor, the plaintiff reasserts the allegations set forth in the complaint and argues that he will likely prevail on the merits of his negligence claims against the defendants. The defendants, of course, argue to the contrary. This case appears to revolve around the timeliness of medical treatment of the plaintiff. (Doc. No. 26). To a large extent, the determination of whether medical treatment was proper and timely, therefore establishing both causation or resultant damages, will likely be influenced by the testimony of opposing experts. At this early stage of the proceedings, with answers to the second amended complaint having just recently been filed, it is too early to fairly determine the probability of success on the merits. Therefore this factor does not appear to weigh in favor of either party, at this time.

As for the second factor, the plaintiff argues that he will suffer irreparable harm if the injunction is not issued. First, he argues that a transfer out of the Middle District would negatively impact his medical treatment. He alleges that he now trusts his current doctors and that, without trust, a patient may not follow prescribed treatment.

With respect to this claim, a risk of irreparable harm must not be speculative. Adams v. Freedom Forge Corp., 204 F.3d 475, 488 (3d Cir. 2000)(citing Acierno v. New Castle Cty., 40 F.3d 645, 653 (3d Cir. 1994)). Here, the plaintiff can only speculate that his medical treatment will suffer as a result of being transferred. However, as the defendant points out, the BOP is under an obligation to provide the plaintiff with adequate medical care

4

regardless of where he is housed. As such, the court will assume that the BOP will supply proper medical treatment to the plaintiff in whatever facility the plaintiff is ultimately housed. Whether the plaintiff follows the treatment he is provided at another facility is a matter of choice for him and not a valid reason to interfere with the BOP's discretion in determining inmate placement.

The plaintiff also argues, under the second factor, that he will be irreparably harmed by a transfer to a facility outside of the Middle District in that he will not be able to personally meet and confer with counsel regarding matters which may arise during the course of this litigation. Concerning this argument, the court notes that since 2008, counsel has only met with his client on two occasions and, thus far, the matter appears to be proceeding in an orderly manner.

Although plaintiff's counsel claims that the discovery process, which has now begun, will require more extensive contact with his client, the court notes that there are many cases before the court, both prisoner and non-prisoner, counseled and *pro se*, in which the plaintiff does not reside within the Middle District and these cases have been able to move forward without consequence. Further, the court is mindful of the plaintiff's status as a federal prisoner, as well as the constraints imposed upon him as a result. The court believes it can certainly provide adequate leeway to the plaintiff and his counsel, if necessary, so that no undue prejudice will be imposed upon the plaintiff as a result of incarceration. This may include, for example, extending the discovery and/or other case management deadlines to accommodate the

5

needs of counsel and the parties.

The court further notes that the defendant disclosed during oral argument that they will not be deposing the plaintiff in relation to the instant action. This is significant as it apparently obviates the need to meet and confer with counsel for purposes of deposition preparation. It appears that the second factor weighs in favor of the defendants.

With respect to the third factor, the court finds that granting the plaintiff's request for injunctive relief would result in greater harm to the defendant than the harm which would be caused to the plaintiff by denying the request. The court notes that no case law has been cited by the plaintiff nor the defendant where a court has overridden the discretion of the BOP to determine inmate housing because of a pending civil action and the alleged needs of counsel to personally meet and confer throughout the entire pretrial process[3]. The sole discretion to decide where an inmate is housed appropriately lies with the BOP. 18 U.S.C. §3621(b); Moody v. Daggett, 429 U.S. 78, 88 (1976). Moreover, the BOP is vested with the responsibility for maintaining the safety and security of the institution and all of the individuals therein. To issue an injunction in this case, as the plaintiff requests, would require the court to question, and become involved in, the discretion of the BOP in transferring

---

[3]The only case law cited regards Federal Rule of Appellate Procedure 23(a). See Hairston v. Nash, 165 Fed. Appx. 233 (3d Cir. 2006); Lemoyne v. Daniels, 2007 WL 433197 (D.Ore. 2007); Overstreet v. Yates, 2005 WL 1984472 (E.D. Cal. 2005). This rule and these cases are inapplicable to the district court or the case at hand.

the plaintiff. This result is of major concern to the court. The BOP has apparently determined in the plaintiff's case that he must be transferred for safety and security reasons. Presently, the plaintiff is serving a life sentence for murder and according to the defendants during oral argument, his security status requires that he be housed at a United States Penitentiary (USP) rather than another type of federal facility like a Federal Correctional Institute (FCI). Other USP facilities in the Middle District have been considered by the BOP for the plaintiff and have been determined to be inappropriate. It is not, nor should it be, the province of this court to interfere with the discretionary decision of the BOP as to where an inmate should be housed. Any attempt by the court to direct the BOP as to where they should house inmates would surely interfere with the BOP's ability to determine how to best run its institutions and how to maintain the safety and security of those in the institutions. Moreover, any such attempt would certainly open the door to an influx of injunction motions by inmates seeking to avoid transfer among facilities during pending litigation, creating an undesirable situation for both the courts and the BOP alike. As a result, this factor weighs in favor of the defendants.

Finally, as to the fourth factor for obtaining injunctive relief, there is no indication that granting the plaintiff his requested relief would be in the public interest. As cited by the plaintiff, "[a]s a practical matter, if a [movant] demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the

[movant]." Am. Tel. & Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1427 n.8 (3d Cir. 1994). However, in this case, as discussed above, the plaintiff has failed, at least at this stage of the litigation, to demonstrate either a probability of success on the merits or irreparable injury should the injunction not be entered. Moreover, the court finds that the public interest in this case lies with the BOP who has the task of making security determinations with which the court has no expertise and should not interfere. Therefore, this factor also weighs in favor of the defendants.

As a final matter, in his motion, the plaintiff requests that, should the court not find the issuance of an injunction warranted, in the alternative the court consider issuing a *writ of habeas corpus ad testificandum*. The court, however, does not consider this a viable alternative. First, this case is in its infancy with an answer to the second amended complaint only recently filed. Second, by agreement of the parties, the case management deadlines extend well into March of 2011, more than a year from now. Third, no trial date will be set until all discovery is concluded and dispositive motions, if any, have been decided. Realistically, trial would not occur until the summer of 2011, at the earliest.

While the court understands counsel's attempts to think "outside the box" with alternative proposals, a *writ of habeas corpus* is designed to bring the body before the court for imminently pending matters, here that is just not the case. A writ would really be an "end run" around the court's duty to affirmatively determine whether an injunction is proper and justified or not. In

8

this case, at this time, a writ would not be a proper alternative.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:** the Plaintiff's Expedited Motion Requesting a Bureau of Prisons Placement in the Middle District Region of Pennsylvania, (Doc. No. 30), be **DENIED**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** January 21, 2010

O:\shared\REPORTS\2009 Reports\09-1409-01.wpd